UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CR-00539-RWS-JMB |
| | ) | |
| MICHAEL J. MCCORMAC, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Meredith L. Reiter, Assistant United States Attorney for said District, and hereby files this response in opposition to Defendant Michael McCormac's motion to suppress evidence (Doc. No. 32). For the reasons set forth below, the United States urges the Court to deny Defendant's Motion.

**FACTUAL BACKGROUND**

## I. The Indictment

On September 29, 2021, a federal grand jury in the Eastern District of Missouri charged Defendant Michael J. McCormac in an indictment alleging one count of health care fraud and three counts of Anti-Kickback Statute violations. According to the Indictment, between on or about March 17, 2017 and November 30, 2019, Defendant was the owner and operator of GoLiveWell Pharmacy, LLC ("GoLiveWell") in the Eastern District of Missouri. GoLiveWell primarily operated as a mail-order pharmacy, which filled prescriptions for patients throughout the United States. Through GoLiveWell Defendant paid illegal kickbacks to supposed "marketing

companies" in exchange for referrals of prescriptions for expensive drugs, which were reimbursed by federal health insurance programs such as Medicare and Medicaid. Throughout his health care fraud scheme, Defendant knew that many of the prescriptions were signed by telemedicine providers with no valid physician-patient relationship to the beneficiaries receiving the prescriptions, and Defendant also knew that the prescriptions were not medically necessary.

## II.     The Search Warrant

Prior to the Indictment, federal agents executed a search warrant at "the premises identified as GoLiveWell Pharmacy located at 13035 Olive Blvd, Suite 210, Creve Coeur, MO." *See* Exhibit 1 ("Search Warrant"). Attachment A to the search warrant contains multiple photographs of the exterior of the GoLiveWell premises. *Id.* at 2.

The United States' application for the search warrant was supported by a 44-page sworn affidavit signed by Federal Bureau of Investigation Special Agent Michael Badolato. *See* Exhibit 2, at 2-45 ("Search Warrant Affidavit" or "Affidavit"). In the Affidavit, Agent Badolato details his nearly 20 years of experience with the FBI, including "extensive training in conducting healthcare fraud investigations." *Id.* at ¶ 1. The Affidavit then provides additional detail of the premises to be searched, including descriptions of the exterior and interior of GoLiveWell. *Id.* at ¶ 2. The application for the search warrant seeks authority to search only the premises described, and only for evidence of the following crimes: "18 U.S.C. §§ 371 (conspiracy); 1341 (mail fraud); 1343 (wire fraud); 1347 (healthcare fraud); 1349 (conspiracy to commit mail fraud, wire fraud, and healthcare fraud); as well as violations of Title 42, United States Code, Section 1320a-7b(b)(2)(A (the Anti-Kickback Statute)." *Id.*

The Affidavit extensively details Defendant's health care fraud scheme and his illegal kickback payments. As the Affidavit demonstrates, Defendant's crimes included paying illegal kickbacks to "marketing companies" for expensive and medically unnecessary prescriptions, many of which were reimbursed by Medicare and Medicaid. *Id.* at ¶¶ 4–10. Probable cause detailed in the Affidavit was supported by agents' witness interviews, review of records and claims, and analysis of audits by pharmacy benefits managers notifying Defendant of the fraud. *Id.* at ¶¶ 4-10; 30-110.

The Affidavit also details probable cause to believe that evidence of Defendant's crimes would be found by searching computers at the GoLiveWell premises. *Id.* at ¶¶ 111–17. Indeed, the Affidavit specifically describes GoLiveWell's pharmacy records system, ComputerRx, and the Affidavit also explains how witness interviews and document review revealed that GoLiveWell employees (including Defendant) used email and a computerized pharmacy point of sale system in the course of their job duties. *Id.* at ¶¶ 111–12. The Affidavit further states that GoLiveWell had at least four computer terminals, all of which were attached to one server located at the GoLiveWell premises. *Id.* at ¶¶ 113. Because computers regularly were used in the course of GoLiveWell's business operations, "the computers located within the business premises at the pharmacy likely contain information related to the potential violations of law referenced herein." *Id.* at ¶ 111.

The Affidavit also describes the importance of computer hardware, software, and electronic files because "(a) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (b) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data." *Id.* at ¶ 115. In addition, the

Affidavit explains that the FBI employs computer forensic personnel, the type of computer and digital evidence those forensic personnel search, and how such evidence may need to be seized and searched by those personnel. *Id.* at ¶¶ 116–17.

Upon finding sufficient probable cause, United States Magistrate Judge Patricia L. Cohen issued the warrant to search the premises described in Attachment A for evidence described in Attachment B. *See* Exhibit 1, at 1. Attachment B describes the "Items and Documents to be Seized," including: "[f]or the time period for violations occurring during March 17, 2017 through the date of the execution of any warrant, any and all evidence, fruits, and instrumentalities relating to or involving evidence of violations of 18 U.S.C. §§ 371 (conspiracy); 1341 (mail fraud); 1343 (wire fraud); 1347 (healthcare fraud); 1349 (conspiracy to commit mail fraud, wire fraud, and healthcare fraud); as well as violations of Title 42, United States Code, Section 1320a-7b(b)(2)(A (the Anti-Kickback Statute). *Id.* at 3. Attachment B then describes twelve specific categories of records subject to search and seizure, each of which was supported by probable cause. *Id.* at 3–6. Federal agents executed the search warrant at the GoLiveWell premises on Thursday, September 26, 2019, seizing the records authorized by Attachment B.[1]

### III.     Defendant's Motion to Suppress

Defendant recently filed a motion to suppress the evidence that the United States seized pursuant to the search warrant. *See* Doc. 32. Defendant's motion does not argue that the search warrant lacked probable cause, nor does Defendant argue that the United States seized evidence that was not enumerated in the search warrant. *Id.* Instead, Defendant argues—without analysis

---

[1] On that same day, federal agents also served GoLiveWell with a subpoena for similar records, which was issued by Assistant United States Attorney Andrew J. Lay, pursuant to 18 U.S.C. § 1346 (commonly referenced as a "HIPAA subpoena").

or explanation—that all of the evidence seized pursuant to the search warrant must be suppressed based on an alleged violation of the Fourth Amendment's "particularity" requirement and that the warrant was "overbroad." *Id.* at 4. For the reasons stated below, this Court should deny Defendant's motion to suppress.

## ARGUMENT

This Court should reject Defendant's motion to suppress the evidence seized by the United States pursuant to the search warrant because (1) the search warrant was sufficiently particular to identify the place to be searched and items to be seized and was not overbroad; and (2) even if the warrant contained deficiencies—which it does not—federal agents acted in good faith reliance on a facially valid warrant.

**I.  This Court should reject Defendant's argument that the search warrant was insufficiently particularized and overbroad because the search warrant adequately described the place to be searched and the specific items to be seized.**

The Fourth Amendment requires that search warrants describe with particularity the place to be searched and items to be seized. *See United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (holding that a "warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized").[2] The particularity requirement "prevents the seizure of one thing under a warrant describing another" and prevents "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (internal citations

---

[2] The Fourth Amendment also requires "a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998); Fed. R. Crim. P. 41. Defendant's motion to suppress does not argue that the search warrant—which was supported by a 44-page Affidavit—lacked probable cause. Because this issue is not in dispute, the United States does not address it here.

omitted). The particularity standard, however, is one of "'practical accuracy' rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007).

Where complex corporate fraud schemes are alleged, search warrants can be sufficiently particular even where they authorize the seizure of broad categories of business documents, including from computers. *See United States v. Alagic*, 4:06-CR- 00740-ERW, 2007 WL 128947, at *6 (E.D. Mo. Jan. 12, 2007) ("Indeed, where, as here, a complex and pervasive business scheme is alleged, the courts have authorized the seizure of broad categories of documents.") (citing, *e.g., United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986) (finding warrant authorizing seizure of five categories of records covering most business documents sufficiently particular where there was probable cause to believe business was permeated by fraud); *United States v. $92,422.57*, 307 F.3d 137, 148–50 (3d. Cir. 2002) (holding that warrant authorizing seizure of computers, instruction manuals, and all business records covering 9 year period sufficiently particular because the seizure of records only of illegal transactions would not be sufficient to prove no legitimate sales occurred). Indeed, the Eighth Circuit has recognized in the context of fraud investigations "a permeated-fraud exception that allows the government to seize almost every record of a business when evidence shows that fraud in the business was pervasive..." *United States v. Sigillito*, 759 F.3d 913, 924 (8th Cir. 2014).

### A.     The search warrant described the items to be seized with particularity.

Here, Defendant argues that "the evidence" must be suppressed because the search warrant was insufficiently particular. Defendant does not identify which evidence should be suppressed, nor does he identify the manner in which he believes particularity was lacking, aside from generally referencing the United States' ability to search computer technology capable of storing

"large volumes of information." Defendant's particularity argument lacks merit and must be rejected for the following reasons.

First, the search warrant authorizes the search and seizure of 12 specific categories of information, each of which are supported by probable cause. For example, Item 1 of Attachment B authorizes the seizure of prescription dispensing records from GoLiveWell, including for specific types of drugs known to have been the subject of an illegal kickback scheme. Item 3 of Attachment B authorizes the seizure of any contracts or other arrangements between GoLiveWell and specific marketing companies with which there was probable cause to believe GoLiveWell had entered into an illegal kickback arrangement. Defendant does not contend that any materials seized during the search warrant fall outside the scope of the items listed in Attachment B. Thus, it is apparent that the search warrant is sufficiently particular to describe the place to be searched and items to be seized.

Second, to the extent Defendant attempts to argue that Item 12 in Attachment B (regarding computer evidence) was insufficiently particular because it allowed the United States to seize any records related to Items 1 through 11 found on "any computers inside the office of GoLiveWell" without identifying which specific computers, Defendant's argument fails. As the Eighth Circuit has made clear, the United States is not required to identify specific computers or digital devices to meet the Fourth Amendment's particularity requirement. *See United States v. Sherman,* 372 Fed. Appx. 668, 675–76 (8th Cir. 2010) (finding warrant authorizing seizure of all business computer equipment and systems sufficiently particular). This is especially true where, as here, the United States does not know in advance the precise format in which all of the information detailed in the search warrant is stored. *See Summage,* 481 F.3d at 1079–80 (finding warrant

authorizing seizure of "computers" sufficiently particular as "no indication was given regarding the format in which the sought-for [evidence]...[was]...created or stored," and it was thus "necessary to search a broad array of items for the relevant materials"). The search warrant was sufficiently particular.

      **B.**      **Attachment B of the search warrant was not overbroad because it only allowed for the seizure of specific categories of evidence of specific crimes that were committed during a specific time period.**

Similar to particularity, search warrants also must not be overbroad. Notably, the fact that a warrant authorizes search and seizure of large volumes of information does not necessarily indicate overbreadth. *See United States v. Timely*, 443 F.3d 615, 623 (8th Cir. 2006) (holding warrant's validity "is not judged solely by how many items were seized pursuant to it" but whether there was probable cause and whether warrant "sufficiently directed officers which items to seize so as to limit their discretion"). Moreover, even if some portion of a search warrant later is determined to be overbroad, only items seized pursuant to the overbroad portion of the warrant are subject to suppression. *Alagic*, 2007 WL 128947, at *7.

Defendant argues the evidence should be suppressed because the description of property to be searched was overbroad. Like with his particularity argument, Defendant does not identify which portion of the search warrant was overbroad or which evidence obtained pursuant to such portion should be suppressed. Defendant's overbreadth argument is belied by the specific limitations imposed by Attachment B of the search warrant. Attachment B limits agents to search and seizure of 12 categories of information including, for example, prescriptions for specific types of drugs (Item 1), contractual documents with specific types of marketing companies (Item 3) and communications with specific types of insurers (Item 6). *See* Exhibit 1, at 3–6. Attachment B also

limits the time period of items and documents to be seized from "March 17, 2017 to the date of the execution of any warrant." Finally, Attachment B authorizes search and seizure of evidence related only to six specific crimes. *Id.* at 3.

To the extent Defendant argues that Item 12 in Attachment B (regarding computer evidence) is overbroad because it allows the United States to seize "generic categories of data" on computers located at the GoLiveWell premises, Defendant's argument fails. Item 12 does not give federal agents *carte blanche* to search anything on the computers located during the search. To the contrary, the search of any such computers was limited to information "discussed above in paragraphs 1–11" of Attachment B. The Affidavit explains in detail why Agent Badolato believed there was probable cause such evidence existed on the computers located at the GoLiveWell premises. *See Sherman*, 372 Fed. Appx. at 676 ("The search warrant necessarily needed to include all computer equipment and systems to effectively allow law enforcement to 'recognize and seize the materials described.'") (internal quotations omitted). Defendant's suggestion that the warrant authorized improper searches of "generic categories of data" or "wide-ranging and exploratory governmental searches" is contradicted by the limitations on the face of Attachment B. Thus, the search warrant was not overbroad.

**II.     Even if the search warrant was insufficiently particular or overbroad—which it was not—this Court should still refuse to suppress the evidence because federal agents acted in good faith reliance on a facially valid warrant.**

Evidence seized in violation of the Fourth Amendment may be suppressed pursuant to the judicially-created exclusionary rule. *United States v. Leon*, 468 U.S. 897, 906 (1984). Such evidence obtained pursuant to a search warrant, however, may be subject to a "good faith exception." *Id. at* 922–23. Under the good faith exception, "evidence seized pursuant to a search

warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). In *Leon*, the Supreme Court identified four situations in which reliance on a search warrant would be unreasonable, including (1) when the affidavit or other testimony submitted in support of the warrant contained a false statement made with knowledge or reckless disregard to the judge who issued the warrant; (2) if the issuing judge "wholly abandoned his judicial role" when issuing the warrant; (3) when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*," and (4) if the warrant was "so facially deficient" that no officer reasonably could presume it was valid. *Id.* at 431 (citing *Leon*).

Courts have found that the good faith exception applies to warrants later deemed insufficiently particular or overbroad. *See, e.g., United States v. Stelton*, 867 F.2d 446, 451 (8th Cir. 1989) ("Even if the evidence had been seized pursuant to overly broad warrants, courts need not exclude evidence seized by law enforcement officers acting in objectively reasonable reliance on a warrant issued by a neutral magistrate"); *United States v. Fiorito*, 640 F.3d 338, 347, n.4 (8th Cir. 2011) (stating "we also reject Fiorito's suggestion that the warrant's lack of particularity made it "facially deficient," preventing any officer from relying on it in good faith"); *United States v. Good Voice*, No. 3:21-CR-30059-RAL, 2022 WL 1448851, at *12, n. 17 (D.S.D. May 9, 2022) (holding "good-faith exception applies to the assertion that the warrant was overbroad with the same force and effect as it does to the assertion that the warrant lacked probable cause") (internal citations omitted). The Eighth Circuit has found that the good faith exception applies even where officers seized and searched a cell phone not listed among electronic devices named in the search

warrant. *See United States v. Pospisil*, 860 Fed. Appx. 457, 458 (8th Cir. 2021) (finding it was not unreasonable for investigators to believe search of phone was authorized by the warrant). *See also United States v. Suellentrop*, 953 F.3d 1047, 1051 (8th Cir. 2020) (search of cell phone not listed among electronic devices in warrant "among the objectively reasonable honest mistakes that the Fourth Amendment tolerates").

Here, Defendant has not pointed to any evidence obtained and intended to be offered by the United States outside the scope of what Attachment B authorized. Nor has Defendant pointed to any false statements or even a lack of probable cause such that the agents' reliance on the language of the search warrant could be deemed unreasonable. Thus, even if Attachment B was insufficiently particularized or overbroad (which it is not), the *Leon* good faith exception applies because federal agents clearly and reasonably relied in good faith on the language in the warrant. *See United States v. Mock*, 4:09-cr-00679- HEA-DDN, Doc. 202, pp. 32-33 (E.D. Mo. Mar. 24, 2011) (holding even if portion of warrant was overbroad, *Leon* good faith exception applied) (citing *United States v. Jimenez*, 205 Fed. Appx. 656, 662 (5th Cir. 2006)). Because the agents acted in good faith, no evidence gathered during the execution of the search warrant is subject to the exclusionary rule.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied. Because there are no disputes of fact necessary to decide Defendant's motion, the United States respectfully requests that the Court deny Defendant's Motion without holding an evidentiary hearing.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ Meredith L. Reiter
MEREDITH L. REITER, #6325095IL
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

        I hereby certify that on July 20, 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

        */s/ Meredith L. Reiter*
        MEREDITH L. REITER, #6325095IL
        Assistant United States Attorney
        111 South 10th Street, Room 20.333
        St. Louis, Missouri  63102
        (314) 539-2200