UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21CR00539 RWS/JMB |
| | ) | |
| MICHAEL J. MCCORMAC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant **Michael J. McCormac**, represented by defense counsel William Marsh, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 3 and 4 of the charge, the Government agrees to move for the dismissal as to the defendant of Counts 1 and 2 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to (a) the defendant's scheme to defraud Medicare, Missouri Medicaid, and Ohio Medicaid through

1

his pharmacy GoLiveWell Pharmacy, LLC ("GoLiveWell") that is charged in the Indictment, and (b) the defendant's payment of illegal kickbacks to marketing companies for referrals of prescriptions to GoLiveWell between on or about February 28, 2018 and November 30, 2019 that is charged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 3 and 4, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offenses. The parties dispute the value of the property subject to forfeiture and plan to litigate this issue at the time of sentencing.

3. **ELEMENTS:**

As to **Counts 3 and 4,** the defendant admits to knowingly violating Title 42, United States Code, Section 1320a-7b(b)(2)(B), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

2

*One*, the defendant knowingly and willfully offered or paid remuneration to Marketing Company MM and Marketing Company HPS as alleged in Counts 3 and 4 of the Indictment;

*Two*, the remuneration was paid primarily in order to induce Marketing Company MM and Marketing Company HPS to purchase and order, arrange for, and recommend the purchasing and ordering, of a good and service insured by Ohio Medicaid and Medicare;

*Three*, the patient's goods and services were covered, in whole or in part, by Ohio Medicaid and Medicare; and

*Four*, Ohio Medicaid and Medicare are federal health care programs.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant Michael J. McCormac ("the defendant") is a resident of the county of St. Louis, Missouri. At all times relevant to the Indictment, the defendant was the owner and operator of GoLiveWell Pharmacy, LLC ("GoLiveWell"), which was located in Creve Coeur, in the Eastern Division of the Eastern District of Missouri. GoLiveWell primarily functioned as a mail-order pharmacy, which filled prescriptions for beneficiaries throughout the United States. At all times relevant to the Indictment, the defendant, through GoLiveWell, submitted or caused to be submitted reimbursement claims for prescription drugs to Medicare, the Missouri Medicaid program, and the Ohio Medicaid program, which are federal health insurance programs and public plans affecting commerce in some way or degree.

3

The defendant incorporated GoLiveWell on or about March 20, 2017 and subsequently enrolled GoLiveWell with various insurers, including federal health insurers and Pharmacy Benefits Manager ("PBMs"), which administer health insurance plans. The defendant, on behalf of GoLiveWell, certified in those agreements that GoLiveWell would comply with applicable federal and state laws, including but not limited to the federal Anti-Kickback Statute.

Between in or about February 28, 2018 through November 30, 2019, a large portion of claims that the defendant, through GoLiveWell, submitted to federally funded health insurance plans included claims for expensive topical creams, oral medications, and antibiotic and antifungal drugs referred to as "foot bath" drugs. The "foot bath" drugs were prescribed purportedly to treat a variety of foot infections and foot pain. Medicare and Medicaid beneficiaries who were prescribed "foot bath" drugs received a plastic foot spa (a "foot bath"), free of charge, and an expensive cocktail of drugs, including oral antibiotic capsules, bottles of antibiotic solution, and tubes of antifungal cream. The drugs included but were not limited to Vancomycin capsules, Clindamycin 1% solution, and Ketoconazole 2% cream. Beneficiaries were instructed to mix the capsules and solution with warm water to soak their feet, then to apply the antifungal cream afterward.

<u>Illegal Kickbacks To Marketing Companies For Referrals</u>

The defendant admits that he, on behalf of GoLiveWell, contracted with purported marketing firms to identify "patients" for whom GoLiveWell could fill prescriptions. The defendant knew that the marketing companies used a variety of tactics to identify patients, including a practice referred to as "doctor chase" (faxing prescriptions to the beneficiary's doctor in hopes he or she would sign it), and running advertisements to attempt to get patients to "opt in"

4

to receiving prescriptions for various expensive drugs, such as topical creams and foot bath drugs. When individuals responded to an advertisement, they would receive a call collecting pertinent personal information, including their health insurance information, and attempting to get the patient to confirm that they wanted the medication.

The defendant, on behalf of GoLiveWell, procured "leads" through various purported marketing companies, including but not limited to Marketing Company MM and Marketing Company, HPS. In exchange for the "leads" (prescriptions) referred to GoLiveWell, the defendant knowingly and willfully agreed to pay illegal kickbacks to the marketing companies in the form of various percentages of GoLiveWell's net profit or "margin" on each prescription, including for prescriptions that he knew would be reimbursed by federal health insurance programs. For example, the defendant agreed to pay Marketing Company MM approximately 60 percent of GoLiveWell's margin and to pay Marketing Company HPS approximately 45 percent of its margin. The defendant and his GoLiveWell employees kept spreadsheets tracking payments to the various marketing companies and stamped the name of the marketing company on each prescription to keep track of which prescription came from which marketing group.

The defendant admits that he structured certain GoLiveWell contracts and invoices with marketing companies to falsely reflect an hourly rate for "marketing" services, the purpose of which was to conceal the true nature of the payments to the marketing companies. For example, on or about February 12, 2019, the defendant, through GoLiveWell, invoiced Marketing Company HPS for 1,043.34 hours of purported marketing services. In reality, the $260,836.06 payment to Marketing Company HPS was calculated by taking 45 percent of GoLiveWell's $579,635.79 margin on prescriptions for that month (after subtracting shipping costs).

Regarding **Count 3**, the defendant admits that, within the Eastern District of Missouri, he knowingly and willfully offered to pay remuneration to Marketing Company MM in the form of $34,053.31, the primary purpose of which was to induce Marketing Company MM to refer various prescriptions to GoLiveWell, including a prescription dated on or about October 26, 2018 by provider A.B. for the drug Chlorzoxazone, which was supplied to Ohio Medicaid beneficiary D.B.

Regarding **Count 4,** the defendant admits that, within the Eastern District of Missouri, he knowingly and willfully offered to pay remuneration to Marketing Company HPS in the form of $166,312.50, the primary purpose of which was to induce Marketing Company HPS to refer various prescriptions to GoLiveWell, including a prescription dated on or about January 30, 2019 by provider S.S. for the drugs Vancomycin, Clindamycin, and Ketoconazole, which was supplied to Medicare beneficiary L.S.

### Receipt of Illegal Proceeds

It is the government's position that as a result of the defendant, through GoLiveWell, submitting claims for prescription drugs which were procured in violation of the Anti-Kickback Statute, Medicare paid GoLiveWell at least $4,700,000, Missouri Medicaid paid GoLiveWell at least $490,000, and Ohio Medicaid paid GoLiveWell at least $330,000 to which it was not entitled. It is the government's position that the defendant received a significant portion of those funds into his personal bank account.

### 5. **STATUTORY PENALTIES:**

The Defendant fully understands that the maximum possible penalty provided by law for the crime of paying illegal remuneration for referrals of items and services paid by federal health care programs, as charged in **Counts 3 and 4**, to which the Defendant is pleading guilty is

6

imprisonment of not more than 10 years, a fine of not more than $100,000, or both such imprisonment and fine for each Count. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 8 as found in Section 2B4.1.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The Government's position is that 18 levels should be added under Section 2B4.1(b)(1) and Section 2B1.1(b)(1)(J), as the Medicare, Medicaid, and Tricare programs lost more than $3,500,000.00 and less than $9,500,000.00. The defendant disputes this special offense characteristic, and reserves the right to advocate as such at the time of sentencing.

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon

7

information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:**  The parties agree that the following additional adjustments apply:

The offense level should be increased three levels, pursuant to 3B1.1(b), because the defendant was a manager or supervisor of the criminal activity.

c. **Other Adjustment(s)/Disputed Adjustments:**  The parties have no further agreements on any other adjustments.

d. **Estimated Total Offense Level:**  The parties dispute the loss amount and reserve the right to argue regarding the loss amount, which will be used to calculate the Total Offense Level at sentencing. The Government estimates that the Total Offense Level is 26.  The defendant disputes this estimate.

e. **Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen

all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** The parties disagree as to loss amount in this matter, and will litigate that issue at sentencing. The parties agree to abide by the district court's determination of that issue, and specifically waive their rights to appeal the district court's ruling resulting in the calculation of the Total Offense Level. In the event the Court accepts the plea, and after determining the Total Offense Level, sentences the defendant within or below the corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or above the corresponding range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. The defendant agrees to provide full restitution to all victims of all charges in the indictment, in addition to any losses caused by other relevant conduct, in an amount equal to the loss determined by the Court at sentencing.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights

11

to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: a forfeiture money judgment equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to defendant's offenses, the exact amount of which shall be equal to any restitution ordered by the Court at sentencing. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

12

require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

13

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

4/27/23
Date

4/24/2023
Date

4/24/23
Date

Meredith L. Reiter
Assistant United States Attorney

Michael J. McCormac
Defendant

William Marsh
Attorney for Defendant

15